ROBERT C. STROUD *v.* PULASKI COUNTY SPECIAL
SCHOOL DISTRICT ET AL

5-4442                                           424 S. W. 2d 141

Opinion delivered February 19, 1968

*Warren & Bullion,* for appellant.

*Leon Catlett, Roy Finch* and *Jim Moore,* for appellees.

CONLEY BYRD, Justice. Appellant Robert C. Stroud, in his capacity as a taxpayer, appeals from a decree holding valid a contract between Holiday Manufacturing Company and the Pulaski County Special School District. Appellant instituted his action pursuant to Ark. Stat. Ann. § 80-136, -137 and -1909 (Repl. 1960) against the School District; E. F. Dunn, Superintendent; and Winston G. Chandler individually and as a member of the School District, to enjoin only the pay-

ment of the transportation costs—the validity of the balance of the contract is not challenged. The complaint alleges that the School District entered into a contract with Winston G. Chandler, a board member, through a corporation owned by Chandler and his family known as Chandler Trailer Convoy, Inc., to move certain relocatable school buildings from Holiday's plant in Camden to the sites desired by the School District. Holiday Manufacturing Company, a division of Holiday Inns of America, Inc., and Chandler Trailer Convoy, Inc., intervened.

The School District had entered into their separate contracts for delivery, F. O. B. school's address, of a total of 25 such buildings. The price per building in each contract is the same and the other charges are in proportion thereto. A portion of the July 28, 1966 contract showing the way Holiday arrived at its contracted amount is as follows:

"That the Seller, in consideration of the covenants, on the part of the Buyer, hereinafter contained, hereby agrees with the Buyer, that the Seller will deliver to the Buyer at the Buyer's address, above listed, the following described equipment, for the following sum of money:

| | | |
|---|---|---|
| 1. | Twenty (20) Portable, Relocatable Buildings, 26 ft. x 56 ft., f.o.b. factory, at $13,643.00 per building | $272,860.00 |
| 2. | Twenty (20) Partition Walls, full width and height, at $298.30 ea. | 5,966.00 |
| 3. | Twenty (20) Hollow Core doors, 1 3/8 in. x 2 ft. 8 in. x 6 ft. 8 in., complete with door jambs, stops, hinges, and hardware, installed and painted, at $30.45 ea. | 609.00 |
| 4. | Welsch California Ash Hardwood Paneling, installed, at $152.00 per | |

|   | | |
|---|---|---|
| | building, | |
| | Total of $2,736.0 | *No Charge* |
| | Sub-Total | $279,435.00 |
| 5. | Sales Tax (Arkansas) at 3% | 8,303.05 |
| 6. | Transportation — 40 units (20 buildings) including permits at $86.00 per unit | 3,440.00 |
| 7. | Service Charge — 40 undercarriages for 95 miles average, at $.10 per mile per unit | 380.00 |
| | Total | $291,638.05 |

of good merchantable quality and in accordance with specifications and the letter furnished to Pulaski County Public Schools, Pulaski County, Little Rock, Arkansas.''

It was shown that, of the $86 transportation charge per unit, Holiday calculated $8 as overhead consumed by it in connection with the transportation of the buildings. Another $8 was paid to the state: $5 for the special permit required to transport each unit and $3 for a transit tag. The remaining $70 was paid to the common carrier for transporting one unit of the building from Camden to the school site. Each building consisted of two units.

The record further shows that Winston G. Chandler is president of Chandler Trailer Convoy, Inc., of which he owns 14 per cent of the stock; that his wife owns 50 per cent of the stock; and that the balance is owned by other family members. Chandler Trailer Convoy, Inc. is a common carrier of transport and holds a Certificate of Convenience and Necessity under the regulations of the State Commerce Commission. Only two other entities are authorized by the State Commerce Commission to engage in similar intrastate transportation of portable buildings. They are Arkansas Transit Homes and Morgan Driveaway, Inc. Arkansas Transit Homes is

owned by Chandler's brother. Chandler owns no interest in Arkansas Transit Homes, nor does the brother own an interest in Chandler Trailer Convoy, Inc. Morgan Driveaway, Inc., has its home offices in Elkhart, Indiana. Its closest terminal is St. Louis.

The tariffs filed with the State Commerce Commission by Chandler Trailer Convoy and Arkansas Transit Homes authorize the transportation of the Holiday units from Camden to the school site for $70 per unit. The filed tariff rate for Morgan Driveaway, Inc., is $104 for the same transportation. Our laws, Ark. Stat. Ann. § 73-1770 (Repl. 1957), provide that no greater or less or different compensation for transportation or for any service in connection therewith between the points enumerated in such tariff shall be charged, demanded or collected. The record shows that after Chandler Trailer Convoy hauled 34 of the units the rest were hauled by Arkansas Transit Homes. It is silent about any contract between Chandler Trailer Convoy and Holiday Manufacturing Company when the contracts were entered into between the School District and Holiday. So far as the record shows, the dealings between Chandler Trailer Convoy and Holiday were on an ''as needed'' basis.

Ark. Stat. Ann. § 80-136, -137 and -1909 make it unlawful for any school board member to be interested directly or indirectly in the sale of any commodities sold to and purchased by the member's district. Thus, in determining whether the contract was void or voidable we look at the contract at the time it was executed. Unless Chandler was to receive a benefit either directly or indirectly when the contract was executed between the School District and Holiday, then Holiday's contract would be valid. The only proof on this issue is that the itemized transportation charge coincides with Chandler's tariff. But here again, the transportation charge also coincides with the tariff filed by Arkansas Transit Homes. Since the law will not presume that the parties to a contract intended an illegal act, 17 Am. Jur. 2d,

Contracts, § 238, we are unwilling to say that this meager evidence is sufficient to show that Chandler had an interest either directly or indirectly in the contract between Holiday and the School District at the time the contract was executed.

The record indicates that the contract between Holiday and the School District was upon competitive bid. Defendant's Exhibit 7 is entitled "Bid Sheet" and has attached thereto specifications for portable buildings for the Pulaski County Special School District. In this instance bids were taken and apparently the bids were let to the lowest bidder meeting the specifications required by the School District. At any rate, Superintendent Dunn testified that the specifications for the bids were drawn so that they would not eliminate any bidder. Of course, if the contract was let on competitive bids, then appellant's argument is without merit, because Ark. Stat. Ann. § 80-1909, *supra*, specifically recognizes that a board member may deal with the school district as to material upon competitive bids.

Affirmed.

GEORGE ROSE SMITH, J., dissents.

GEORGE ROSE SMITH, Justice, dissenting. The majority opinion overlooks a basic principle in the law of trusts—the rule that a fiduciary, regardless of his good faith, is absolutely forbidden to take a position in which his personal interest is in conflict with his duty as a trustee.

A public officer occupies the status of a trustee with respect to the governmental body (here the school district) that he represents and with respect to its property. *Fidelity & Deposit Co. of Md.* v. *Cowan,* 184 Ark. 75, 41 S. W. 2d 748 (1931); *Grooms* v. *Bartlett,* 123 Ark. 255, 185 S. W. 282 (1916); *State* v. *Baxter,* 50 Ark. 447, 8 S. W. 188 (1887). As a trustee he must conform to the high ethical standard imposed by the law

upon all fiduciaries. In Cardozo's familiar words: "A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior." *Meinhard* v. *Salmon,* 249 N. Y. 458, 164 N.E. 545, 62 A. L. R. 1 (1928).

A trustee cannot engage in any activity in which his own financial interest conflicts with that of the trust. For example, an administrator cannot buy at his own sale, simply because his own pecuniary interest demands that he get the property as cheaply as possible while his fiduciary duty demands that he obtain the highest possible price. Good faith and what might appear to be the best interest of the trust have nothing to do with the matter.

In the case at bar I do not impugn Chandler's motives, because, conceding his integrity and high principles, the disqualification is absolute. "No one can be allowed to assume a position in which his interests are antagonistic to his duties, and derive a personal benefit from it. However firm the virtue of individuals may be, human nature as a general rule cannot endure the test, and equity, for security, removes the temptation by the inflexible rule that all profits of the trustee . . . must enure to the benefit of the *cestuis que trustent.*" *Trimble* v. *James,* 40 Ark. 393 (1883).

Apart from statute, Chandler's position in this case involves that same conflict of interest which, without exception, is prohibited by the law of trusts. On the one hand his duty as a school director required him to purchase the needed school buildings or other property at the lowest possible price. The district is entitled to demand that its directors be absolutely free from any personal interest in such purchases. Here the testimony makes it plain that all the district's contracts are not let to the lowest bidder, but even if they were we all know that one prospective seller can be favored over his competitors by the wording of the specifications.

On the other hand, if Chandler can participate to his profit in the performance of the contract, as he is doing in this case, his personal interest clashes directly with his duty to the school district. Suppose, for example, that there are two rivals competing for the district's business. One fabricates his buildings or other products locally, while the other must rely upon the type of transportation facilities furnished only by Chandler or his brother. How can Chandler, in choosing between the two, discharge his duty to the district with the perfect impartiality that the law demands? He cannot.

It is no answer to say, as the majority do, that unless there was prearrangement between Chandler and Holiday when the contract was executed between Holiday and the district, then Holiday's contract is valid. That attitude accomplishes nothing except to outlaw actual dishonesty if it is detected. In Cardozo's phrase, it condones conduct meeting the morals of the market place, but it fails to hold public officers to their fiduciary duty. Moreover, nothing is in issue here except Holiday's subcontract with Chandler. If that contract were declared to be invalid, as against public policy, the district would be fully protected both in this instance and in similar situations that will certainly arise now that the majority have opened the door to constructive fraud.

Finally, the statutes adopt the controlling principle so explicitly that I do not understand how the majority can conclude that Chandler's subcontract is not in direct violation of the law. Section 80-138 reads in pertinent part as follows: "It shall be unlawful for any person serving as a member of any . . . local school board to be or become interested directly or indirectly in the profits or purchase price received by any person, firm or corporation from the sale of any . . . materials of whatsoever kind or character sold to any school board of which such person may be a member." (My italics.) The wording of the statute fits the District-Holiday-Chandler transaction like a rubber glove. If the legislature has not prohibited deals such as the one now be-

fore us, the English language is incapable of achieving that result. I would reverse the decree and declare the Chandler subcontract to be void.