Elwin A. HOOVER *v.* ARKOMA PRODUCTION COMPANY

CA 89-209                                          780 S.W.2d 585

Court of Appeals of Arkansas
Division II
Opinion delivered December 6, 1989
[Rehearing denied January 3, 1990.*]

---

*Corbin, C.J., would grant rehearing.

*Dorsey Ryan* and *Eddie N. Christian,* for appellant.

*Jones, Gilbreath, Jackson & Moll,* by: *Mark Moll,* for appellee.

JAMES R. COOPER, Judge. The appellant in this contract case is a petroleum geologist who worked for the appellee, Arkoma Production Company, from June 1981 to February 1985. The appellant had an employment contract with the appellee dated June 22, 1982, which superseded an initial contract dated June 11, 1981. The issues in this case involve whether the contract was orally modified by the parties in August 1984 and whether the language of the contract gives the appellant the right to participate in wells drilled by the appellee after the appellant left the appellee's employ. The chancellor, after hearing the witnesses and reviewing the evidence, found by clear and convincing evidence that the parties had orally modified the agreement and that the agreement only gave the appellant the right to participate in wells drilled during his employment and not in all the wells drilled in a production unit. From that decision comes this appeal, which was filed in the Supreme Court on the assertion that it involved a question about oil, gas, or mineral rights, jurisdiction over which is in the Supreme Court pursuant to Rule 29(1)(n). The case was transferred by the Supreme Court to the Court of Appeals on May 15, 1989.

For reversal, the appellant contends that the chancellor erred in finding that there had been an oral modification of his written employment contract of June 22, 1982, and that the chancellor erred in finding that the employment contract limited

the appellant's rights to individual boreholes rather than production units. We affirm.

We first address the appellant's assertion that the evidence does not support a finding that the parties orally modified the employment contract. Although this court tries chancery cases *de novo* on appeal, we do not reverse the chancellor's findings of fact unless they are clearly erroneous. *Ballard* v. *Carroll*, 2 Ark. App. 283, 621 S.W.2d 484 (1981); Ark. R. Civ. P. Rule 52(a). We review the evidence in the light most favorable to the appellee, indulging all reasonable inferences in favor of the decree. *Id*. In cases involving a question of oral modification of a written agreement, the modification must be proved by clear and convincing evidence. *City National Bank of Fort Smith* v. *First National Bank & Trust Company of Rogers*, 22 Ark. App. 5, 732 S.W.2d 489 (1987), *Freeman* v. *Freeman*, 20 Ark. App. 12, 722 S.W.2d 877 (1987). Upon review, however, the test is not whether we are convinced that there is clear and convincing evidence to support the findings of the judge, but whether we can say that the judge was clearly wrong in his findings. *Akin* v. *First National Bank*, 25 Ark. App. 341, 758 S.W.2d 141 (1988); Ark. R. Civ. P. Rule 52.

"We have said that in such a case, the question we must answer on appeal is whether the chancellor's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Freeman* v. *Freeman*, 20 Ark. App. 12, 722 S.W.2d 877 (1987)." *Akin, supra*, at 345. Even where the burden of proof is by clear and convincing evidence, we defer to the superior position of the chancellor to evaluate the evidence. *Akin, supra; Bicknell* v. *Barnes*, 255 Ark. 697, 501 S.W.2d 761 (1973); *Turner* v. *Pennington*, 7 Ark. App. 205, 646 S.W.2d 28 (1983). We have also observed that a requirement that evidence be clear and convincing does not demand that the evidence must be uncontradicted. *City Nat'l Bank of Ft. Smith, supra; Freeman, supra*.

There was evidence at trial to show that, in addition to salary and other benefits, the employment contract of June 22, 1982, provided that the appellant had a right to receive an "overriding royalty interest" ("ORRI") in the appellee's oil and gas leases with the exception of those in the Aetna Gas Field. An ORRI is a

type of incentive pay option to encourage successful research and exploration for gas and petroleum. The Aetna Gas Field was excluded from the appellant's ORRI entitlement because, at the time the contract was negotiated, the lease transactions with regard to the field were underway and the appellant had not been materially involved in the Aetna acquisition. There is no dispute between the parties as far as the Aetna Field exclusion is concerned.

During the course of the Aetna acquisition and as part of the same transaction by which the appellee acquired the Aetna leases during the Aetna acquisition, the appellee obtained rights to an additional 9,000 acres in what is known as the Cecil Field. The appellant testified at trial that the Cecil Field would probably have been excluded from his ORRI rights under the contract had the parties contemplated its acquisition during the course of the Aetna acquisition. However, it was not excluded, and the chancellor found that the appellant had an apparent right to an ORRI in the Cecil Field under the parties' original agreement. Nevertheless, the chancellor also found that this original agreement had been orally modified by the parties and that, under the terms of the modified agreement, the appellant had no right to an ORRI in the Cecil Field. The appellant asserts that the chancellor erred in finding that the appellant assented to the terms of the modified agreement. We do not agree.

The record shows that the appellant confronted Michael McCoy, a managing partner of the appellee, and asserted a right to an ORRI in the Cecil Field. The record also shows that Mr. McCoy proposed a modification of the employment contract whereby the appellant would receive a substantial benefit in exchange for relinquishment of his claim to an ORRI in the Cecil Field. Finally, the record shows that the appellant accepted this benefit and asserted no interest in an ORRI in the Cecil Field for the duration of his employment with the appellee.

The above-mentioned benefit, which the appellant accepted, was the right to participate in the appellee's wells on an "un-promoted" basis. Although ORRI rights should not be confused with the right to participate, both ORRI rights and the right to participate in production may serve as an incentive to employees. Participation in wells can be on either a "promoted" or an

"unpromoted" basis. Participation by the appellant in wells on a "promoted" basis means that he pays 1% of the costs of drilling a well and, in exchange therefor, receives .67% of the well's revenues. On the other hand, participation on an "unpromoted" basis means that he pays 1% of the expenses but is entitled to 1% of the revenues instead of .67%. Obviously, "unpromoted" participation is more lucrative than "promoted" participation.

The trial court found that the appellant gave up any interest in an ORRI in the Cecil Field in consideration of his change from promoted to unpromoted status. Among other things, the parties' agreement as to the appellant's employment provided: "Arkoma Production Company agrees to assign you a 1% of 8/8 overriding royalty interest, proportionately reduced to the working interest owned or controlled by Arkoma and its investors or assigns." The agreement further provided that the overriding royalty interest applied to any lease acquired by the appellee with the exception of the Aetna Field. The agreement also provided:

> You shall have the right to participate for a 1% working interest, proportionately reduced to the working interest controlled by Arkoma in any wells drilled by Arkoma Production Company, outside the confines of the Aetna Gas Field, or any well drilled by another operator, outside the confines of the Aetna Gas Field, in which Arkoma and its investors own a working interest. You shall be required to participate on the same promoted terms as the other Arkoma in-house investors.

The evidence at trial was that the appellant and another of the appellee's employees, Mark Wilson, had contracts which were virtually identical except as to salary. The above-noted fringe benefit entitlements were apparently worth a large amount of money to the appellant, and he participated in ninety-two wells while in the appellee's employ. Until August 1984, Mr. Wilson and the appellant had participated in the appellee's wells on a promoted basis. Until that time, the appellant requested and received his ORRI on those wells in which he participated on a promoted basis. At some time that August, the appellant and Mr. Wilson had some discussions with Mr. McCoy, a managing partner of the appellee, about whether they were entitled to an ORRI on the Cecil Field. Mr. McCoy's position was that the

Cecil Field lease was a part of the Aetna Field acquisition and, as such, was excluded by the parties' contract. The issue of the Cecil Field override was resolved as to Mr. Wilson by the parties' agreement that Mr. Wilson would terminate his employment with the appellee but be allowed his Cecil Field override. Mr. Wilson testified that the other option discussed with Mr. McCoy would allow him to remain in the appellee's employ upon waiver of any claim to a Cecil Field override in exchange for continued employment and the right to participate in future wells on an unpromoted basis. Mr. Wilson elected to leave Arkoma and take the Cecil Field override, even though it meant giving up lucrative participation rights in future wells.

The appellant's account of the August 1984 discussions with Mr. McCoy does not differ substantially from Mr. McCoy's testimony or that of Mark Wilson. The parties' testimony indicates that, when the question of the Cecil Field override arose, Mr. McCoy proposed two options. One involved a concession of the Cecil Field override with the understanding that employment would terminate; the other involved a waiver of the override right but with continued employment and a more lucrative participation right in future wells. Mr. Wilson took the Cecil override and left the appellee's employ. The appellant expressed a desire to remain in the appellee's employ when given the options and thereafter participated in thirty-three wells on an unpromoted basis after previously participating in a large number of wells on a promoted basis. The evidence was that the Cecil Field override was worth about $200,000.00, while the difference in participation status after August 1984 increased revenues to the appellant by about $171,000.00. During his continued employment, after August 1984, the appellant did not ask for a Cecil Field ORRI.

The appellant asserts that there was no evidence that he specifically expressed agreement to the modification of the contract which Mr. McCoy proposed, and that the evidence was therefore insufficient to support the chancellor's finding that the appellee gave the appellant the right to participate in future wells on an unpromoted basis in exchange for the relinquishment of any claim to an overriding royalty interest in the Cecil Field. We disagree because the appellant's assent to the modification of the employment contract was evidenced by the appellant's abandonment of his claim to a Cecil Field ORRI during his continued

employment after the discussions of August 1984 and by his acceptance of the substantial benefit conferred by the appellee of unpromoted participation status.

In *Beasley* v. *Boren*, 210 Ark. 613, 197 S.W.2d 287 (1946), our Supreme Court observed:

> The parties to a contract may, by their mutual actions in carrying it out, furnish an index to its meaning, which the language thereof fails to do. After all, the written instrument is but an evidence of what the signers thereof propose to bind themselves to do, and when, by their conduct in carrying out the agreement, both of the parties to the contract demonstrate an intention to heal an uncertainty in the contract, the courts will generally adopt this practical construction. [citations omitted]

*Beasley*, 210 Ark. at 612. Moreover, it has been held that a party who knowingly accepts the benefits of a proposed contract is bound by its terms. *See, e.g., James* v. *P.B. Price Construction Co.,* 240 Ark. 628, 401 S.W.2d 206 (1966). We hold that the chancellor did not clearly err in finding a modification of the employment contract.

Next, the appellant contends that the chancellor erred in finding that the contractual provision granting the appellant "the right to participate for a 1% working interest . . . in any wells drilled" did not entitle the appellant to participate in redrills (located in essentially the same place as the original well), or in new wells (located elsewhere in the production unit) drilled after the appellant left the appellee's employ. Essentially, the question is whether the term "well" as used in the agreement means a single well, or borehole, or whether the term "well" refers to an entire production unit.

The court held that the appellant's "working interest in any wells drilled" was limited solely to boreholes and not the acreage "unit" upon which the wells were drilled. The court found that the contract contemplated working interest rights to exist in single wells with which the appellant was involved and not working interests in entire production units.

The testimony at the trial as to what meaning industry usage and trade would assign to the terms used support the trial court's

findings that the appellant's right was that of participation in wells, not entire units, and only in those with which the appellant was involved while in the appellee's employ. As the chancellor observed, while some of the testimony at trial was conflicting, even the testimony of the appellant's witnesses tended to support the position that the agreement contemplated participation rights extending solely to single wells. As the trial court noted, the evidence demonstrated that the reason employees were given participation rights was to encourage productivity and provide incentive to employees to remain in the company's employ, and no such incentive would need to be propagated after an employee terminated his employment.

Where the terms of a contract are ambiguous and capable of having more than one meaning, extrinsic evidence is permitted to establish the intent of the parties, and the meaning of the contract then becomes a question of fact. *Floyd* v. *Otter Creek Homeowners Association*, 23 Ark. App. 31, 742 S.W.2d 120 (1988). Obviously, the appellant and the appellee disagreed as to the meaning of the term "well" in their agreement. Expert witnesses testified, along with the parties, and there was evidence that former employees did not participate in subsequent wells or redrills after leaving the appellee's employ. The chancellor essentially found that the participation clause of the employment agreement was to serve as a fringe benefit and as an incentive for continued employment. In light of the evidence, we cannot say the chancellor's finding in this regard is erroneous.

In light of the foregoing and based upon our consideration of the record, the decision below is affirmed.

Affirmed.

ROGERS and MAYFIELD, JJ., agree.