Walter KITCHENS *v.* John EVANS
and Sheldon Baum

CA 93-171                                   870 S.W.2d 767

Court of Appeals of Arkansas
Division II
Opinion delivered February 16, 1994

20

*Bramblett & Pratt*, by: *James M. Pratt, Jr.*, for appellant.

*Spencer, Spencer, Depper & Guthrie*, by: *David F. Guthrie*, for appellees.

JOHN B. ROBBINS, Judge. The appellant, Walter Kitchens, appeals from an order of the circuit court of Calhoun County awarding $114,620.00 plus interest and costs to appellees, John Evans and Sheldon Baum, who are assignees of claims by three medical facilities for medical services provided to Kitchens. On appeal, Kitchens contends that the court erred in finding that the debt, barred by the statute of limitations, had been revived by his conduct and erred in determining the amount of the judgment. We reverse and dismiss.

The record shows that on July 31, 1989, John Evans and Sheldon Baum filed a complaint reflecting six medical facilities as plaintiffs which alleged that Kitchens owed a total of $143,422.63 for medical services provided by the facilities. On September 22, 1989, Kitchens answered that the statute of limitations barred collection of any such debts. On January 22, 1990, the court granted John Evans' motion to be substituted as plaintiff and dismissed claims concerning three of the medical facilities. On April 3, 1990, Sheldon Baum was joined as a plaintiff in the action.

Kitchens testified at the hearing on this matter that in a 1983 accident involving a Honda three-wheeler he sustained a spinal cord injury causing paralysis and that from 1983 through 1986 he received medical treatment from facilities in Arkansas, Texas, and Oklahoma. He stated that during this time he filed a lawsuit in Texas against American Honda Motor Company (Honda) seek-

ing, inter alia, reasonable medical expenses and that eventually the case was settled out of court. During this same period, he was involved in a divorce proceeding in Texas with his wife, Etta Kitchens. Kitchens testified that under the terms of the 1985 divorce decree, he agreed to pay "[a]ny hospital, doctor, and/or medical bills incurred by [Kitchens] regardless of when incurred."

John Evans testified that through his association with Etta Kitchens, he learned about Kitchens' injury and the lawsuit. He stated that he and Sheldon Baum contacted the three medical facilities and obtained assignments of Kitchens' medical bills. The assignments from the Texas Institute for Research and Rehabilitation (TIRR), the Texas Rehabilitation Commission (TRC), and the City of Faith Hospital (CFH), which were purchased for approximately $26,500.00, represent $114,620.00 in medical bills.

Kitchens testified that he had never received a bill from TIRR or TRC. He stated that he received a bill from CFH in 1987 but later had received a letter from Medicare stating that Medicare had paid a portion of that bill. The record includes a copy of a bill from CFH, dated April 8, 1988, which reflects a balance of zero. Kitchens testified that he thought all medical bills had been paid, and he denied knowing that he owed money to the three facilities.

In a letter opinion denying Kitchens' motion for summary judgment, the court stated:

> Clearly, all of the claims in question are barred by the statutes of limitations. What, if anything, has occurred that would revive these debts? Arkansas law addresses acknowledgment by a debtor as in some situations to be sufficient. *McHenry* v. *Littleton*, 237 Ark. 483, 374 S.W.2d 171 (1964).

> In the McHenry case, supra, the Court pointed out that acknowledgment need not affirmatively express an intention to pay the debt but that the debtor recognizes the debt as a subsisting obligation and further make no statement repelling the presumption that he intends to pay.

> Mr. Kitchens generally acknowledged debts for medical services in his personal injury suit against Honda. As such

he recognized, generally, such obligations and had made no indication, other than in this lawsuit, that he does not intend to pay.

In an order filed on July 20, 1992, the court stated:

The amounts of the assigned accounts for which [appellees] seek judgment against [Kitchens] are Texas Rehabilitation Commission — $52,379.00, the Institution of Rehabilitation and Research — $31,110.60, and the City of Faith Hospital — $31,131.35. The defense that the City of Faith Hospital account had a zero balance after payment by Medicaid is dismissed as said account was assigned to [appellees] for valuable consideration.

Kitchens first argues that the trial court erred in failing to find this action barred by Ark. Code Ann. § 16-56-106 (1987), which provides as follows:

(a) No action shall be brought to recover charges for medical services performed or provided prior to April 1, 1985, by a physician or other medical service provider after the expiration of a period of eighteen (18) months from the date the services were performed or provided.

(b) No action shall be brought to recover charges for medical services performed or provided after March 31, 1985, by a physician or other medical service provider after the expiration of a period of two (2) years from the date the services were performed or provided or from the date of the most recent partial payment for the services, whichever is later.

The trial court agreed that the action was barred by the above statute of limitations but found that the lawsuit filed by Kitchens, in which he sought damages that included his medical expenses, demonstrated his acknowledgment of the debt in issue and therefore had revived the debt. Kitchens contends his action was not sufficient to revive the debt.

■ ■ Actions sufficient to revive a barred debt were discussed by the supreme court in *Morris* v. *Carr*, 77 Ark. 228 (1905), as follows:

The Supreme Court of the United States in *Shepard* v. *Thompson*, 122 U.S. 231, uses this language: "The statute of limitations is to be upheld and enforced, not as resting only on a presumption of payment from lapse of time, but, according to its intent and object, as a statute of repose. The original debt, indeed, is a sufficient legal consideration for a subsequent new promise to pay it, made either before or after the bar of the statute is complete. But, in order to continue or revive the cause of action after it would otherwise have been barred by the statute, there must be either an express promise of the debtor to pay the debt, or else an express acknowledgment of the debt, from which his promise to pay may be inferred. A mere acknowledgment, though in writing, of the debt as having once existed is not sufficient to raise an implication of such a new promise. To have this effect, there must be a distinct and unequivocal acknowledgment of the debt as still substituting as a personal obligation of the debtor.'

. . .

In *Ringo* v. *Brooks*, 26 Ark. 541, where it was held that the acknowledgment was not sufficient because it did not point out the debt, and was made to a stranger, Judge SEARLE, in discussing the facts of that case, said: "Like all other acknowledgments and promises having legal force and sanction, they must be made to a party in interest; to the person to whom the debt is due, or one authorized to act for him, and *with the intent at the time to pay it*." The court in that case did not say, nor did the court mean, nor was it necessary to hold, that such intention to pay must be expressed in the acknowledgment. All that case meant to hold was that the acknowledgment should be made to the party in interest, and be of such unequivocal character as to recognize the indebtedness as a subsisting obligation, and that there should be nothing in the face of the writing or written evidence of acknowledgment to repel the presumption of an intention to pay which the law raises by such acknowledgments.

77 Ark. at 232-33. In *Morris* v. *Carr*, cited above, the appellee

wrote the appellant asking if the appellant wanted to pay off a promissory note or use the money for another year. The court found that when the appellant responded that "he would retain the money," he clearly acknowledged the debt as a subsisting obligation. The court stated that it found no proof to overturn the trial court's finding that the above language was not accompanied by anything negativing the presumption of an intention to pay the debt.

In *Schaefer* v. *Baker*, 181 Ark. 620, 27 S.W.2d 83 (1930), the appellant took title by inheritance to an encumbered piece of real estate. The court found the obligation revived when she wrote a letter advising the creditor that she was not in a position to pay her father's debt at that time and stating "please advise me what to do." The court found that she not only acknowledged the lien against the property but promised to discharge it.

In *McHenry* v. *Littleton*, 237 Ark. 483, 374 S.W.2d 171 (1964), a lender brought suit to foreclose a mortgage upon land owned by a husband and wife. In response to a letter from the lender, the couple sent the lender a money order and the wife stated in the accompanying letter: "I am hoping to be able to pay the account in full in the near future. I thought when I talked with [you] last that I would soon be able to pay you every penny on my account at once, but have been disappointed." Some months later, the wife offered by letter to pay on the account and added: "I cannot pay it all now." The court found these letters were sufficient acknowledgments to revive the debt.

In *Wright* v. *Wright*, 279 Ark. 35, 648 S.W.2d 473 (1983), a father sought repayment of a $10,000.00 loan to his son and daughter-in-law. The son and his wife used the $10,000.00 as payment on land they bought from M. J. Graham. When the father inquired about repayment of the loan, the son and his wife wrote in a letter to the father:

> Concerning the 10,000. We can't get it from Mr. M. J. Graham because he is 6 ft. under the ground.
>
> You have a monthly income if you can't live on it then we think you should go to a rest home and live. They will take care of you for the income you receive.

The court held that the letter did not recognize the indebtedness as a subsisting obligation and, therefore, fell short of providing a revival by acknowledgment.

In the case at bar, the trial court found that by filing the suit against Honda, Kitchens recognized "generally" his obligation to pay the bills in issue. We conclude from our review of the cases discussed above that this court must determine if the filing of the suit or the agreement incorporated into the divorce decree was (1) an express promise to pay the debts or an express acknowledgment of the debts from which Kitchens' promise to pay may be inferred, and (2) an acknowledgment of the specific debts asserted to "the party in interest" or to "the person to whom the debt is due." This standard also has been stated as follows: "In order to take the debt out of the statute or to avoid prescription, the acknowledgment or promise must be made, not to a stranger, but to the creditor himself or to someone acting for him, or with the intention that it be communicated to the creditor." 54 C.J.S. *Limitations of Actions* § 262 (1987). In applying the principles set forth in the above authorities, we find that Kitchens' actions in the case at bar fall far short of providing a revival of the debts. Neither the filing of the lawsuit nor the language in the divorce decree constitutes an acknowledgment of the specific debts to the specific creditors. Because we reverse and dismiss on Kitchens' first point, we need not address his second point for reversal.

Appellees contend that should this court find that Kitchens' actions did not revive the debt, the court then must affirm the trial court's order pursuant to one of three alternative theories. First, appellees contend this court should apply a different statute of limitations. Appellees argue that because Kitchens agreed in the property settlement incorporated into the divorce decree that he would be responsible for any medical debts he incurred, the proper statute to be applied is Ark. Code Ann. § 16-56-114 (1987), which provides: "Actions on all judgments and decrees shall be commenced within ten (10) years after the cause of action shall accrue, and not afterward." We do not agree. There is no evidence that the subject medical service providers were parties to Kitchens' divorce action. Creditors are not ordinarily parties to a divorce action and are not, therefore, bound by an order regarding the parties' debts. *See Hackett* v. *Hackett*, 278

Ark. 82, 643 S.W.2d 560 (1982). Appellees, as assignees of these medical bills, did not and could not sue to enforce Kitchens' divorce decree. They brought their action to recover judgment for medical bills. The supreme court has determined that the General Assembly intended § 16-56-106 to cover all actions brought to recover charges for medical services. *See Ballheimer* v. *Serv. Fin. Corp.*, 292 Ark. 92, 728 S.W.2d 178 (1987).

        Appellees also assert the doctrine of estoppel as an alternative basis for affirming the trial court's order. We note that:

> In general, a court may exercise its equitable jurisdiction and apply the doctrine of estoppel under appropriate facts to preclude [a party] from utilizing the statute of limitations as a bar, even in the absence of an express statutory basis for tolling the period. In particular, estoppel precludes [a party] from asserting the statute of limitations when his actions have fraudulently or inequitably invited [a party] to delay commencing legal action until the relevant statute of limitations has expired, or when [the other party] has done anything that would lull [a party] into inaction so that his vigilance is relaxed.

> Before estoppel can toll the statute of limitations, the party to be estopped must be apprised of the facts; the other party must be ignorant of the true state of facts, and the party to be estopped must have acted so that the other party had a right to believe that the party intended its conduct to be acted upon; and the other party relied on the conduct to its prejudice.

> Estoppel to plead limitations may arise from agreement of the parties, or from [the party's] conduct or representations, including those of his agent or representative, or even from his silence when under an affirmative duty to speak. The issue is whether the conduct and representations of the party are so unfair and misleading as to outbalance the public's interest in setting a limitation on bringing actions.

54 C.J.S. *Limitations of Actions* § 24 (1987). Appellees have

failed to demonstrate that Kitchens invited them to delay legal action or lulled them into inaction.

Finally, appellees contend that because TRC is a governmental agency, its account is not even subject to a statute of limitations defense. However, "[t]he immunity of the state from application of the statutes of limitation does not extend to its assignee or transferee who is seeking to enforce rights purely for his private benefit." 54 C.J.S. *Limitations of Actions* § 20 (1987). *See also Brookfield* v. *Rock Island Improvement Co.*, 205 Ark. 573, 169 S.W.2d 662 (1945).

Reversed and dismissed.

PITTMAN and ROGERS, JJ., agree.