Joyce KINKEAD *v.* ESTATE OF Harold KINKEAD

CA 94-1209 912 S.W.2d 442

Court of Appeals of Arkansas
Division I
Opinion delivered December 20, 1995

 

*Joyce Kinkead*, Pro Se.

*Hoyt Thomas*, for appellee.

JOHN MAUZY PITTMAN, Judge. Appellant, Joyce Kinkead, appeals from an order of the Cleburne County Probate Court. She contends that the court erred in denying her claim of $11,960.50 for legal work she performed for the decedent prior to his death and in imposing sanctions against her under Rule 11 of the Arkansas Rules of Civil Procedure. We agree that the probate court erred in imposing sanctions and affirm as modified.

In her claim against the estate of her late father-in-law, Dr. Harold Kinkead, appellant sought legal fees for representing him in an action against his brothers and sisters to obtain an easement for ingress and egress to two acres of river property that Dr. Kinkead had received from a settlement of a family partition action. Appellant was also a party to the partition action and the resulting settlement and indemnity agreement between the parties. Appellant testified that Dr. Kinkead asked her to represent him in obtaining an easement to his two acres across his brothers' adjoining property. Appellant admitted that Dr. Kinkead's two acres also adjoined property that she and her husband received from the family settlement; that Dr. Kinkead did not have an easement because it was decided at the time the settlement agreement was signed that Dr. Kinkead would sell his two acres to appellant and her husband; and that Dr. Kinkead later refused to transfer his two acres to her husband, resulting in her husband's refusal to let Dr. Kinkead cross their property. The easement action ended when the chancery court entered a directed verdict in favor of the defendants, finding that Dr. Kinkead had failed to prove any right to an easement and further finding that Dr. Kinkead had settled any claims or rights he had against the defendants' property under the parties' prior settlement agreement.

Appellant testified that, after the conclusion of the easement trial, Dr. Kinkead told her to send him a bill. Appellant testified she told him that her services would probably run approximately $10,000.00 and to wait until after the order was entered. She claimed that she had an oral agreement with Dr. Kinkead

that he would pay her legal fees of $95.00 per hour for representing him. The judgment entered in the easement lawsuit awarded the defendants attorney's fees of $2,943.75. Appellant testified that she received a check from Dr. Kinkead for $2,207.81, which she claims represented three-fourths of the attorney's fees that he owed to defendants' attorneys, the Friday Firm. She stated that, when she received the final order, the chancellor had also included an award to the defendants of their costs. She stated that she then wrote Dr. Kinkead on July 28, 1989, and advised him that he also owed $39.82, which represented three-fourths of the court costs awarded to the defendants. Appellant claims that, in response to her letter, she received Dr. Kinkead's August 7, 1989, note that stated in full: "Pay the Friday firm. I have stolen more chain than I can swim with as it is. I will not attempt an appeal. Let me know how much money I owe you, so I can make a loan at the bank." The note was signed "Harrold."

Although Dr. Kinkead's easement lawsuit was concluded by the judgment entered August 2, 1989, appellant never sent Dr. Kinkead a bill of any kind for her legal services. The first demand appellant made for payment of her legal fees was when she filed her claim against Dr. Kinkead's estate on November 17, 1993, more than four years after she rendered her last legal service for Dr. Kinkead. The estate, appellee herein, objected to appellant's claim, pleading the statute of limitations, the statute of frauds, accord and satisfaction, that the charges were unreasonable, and that appellant had volunteered her legal services.

At the hearing on her claim, appellant contended that her claim for legal services was not barred by the three-year statute of limitations for oral contracts because her claim was based on a written instrument, i.e., Dr. Kinkead's August 7, 1989, note, and therefore, her claim was within the applicable five-year statute of limitations. See Ark. Code Ann. § 16-56-111(a) (Supp. 1993).

After the conclusion of the hearing, a letter opinion dated May 9, 1994, was sent by the probate court and read in part:

> An obvious and legitimate argument can be made on these facts that if [appellant] would try to do her client [Dr. Kinkead] out of his land while he was alive and she was representing him, she certainly wouldn't hesitate to do his estate out of money after he's dead. She waited for

the last day of filing to present her claim for legal fees, and she admits that she never presented a bill under her alleged contract until that time. YET HER LAST LEGAL WORK FOR MR. KINKEAD WAS DONE ON JULY 26, 1989, AND HE DIDN'T DIE UNTIL MORE THAN FOUR YEARS LATER! . . . I think her claim is barred by the Statute of Limitations. But more importantly, I just simply don't believe she ever had any contract of employment with Mr. Kinkead.

In its order entered on May 25, 1994, the probate court found that appellant had failed to sustain her burden of proof of establishing an employment contract for compensation with [Dr. Kinkead] as set forth in the claim filed against the estate. The court also found that appellant's claim against the estate alleged an oral contract of employment and would fall within a three-year statute of limitations. The order assessed sanctions against appellant in the amount of a $750.00 attorney's fee in favor of the estate's attorneys and expenses incurred in the amount of $162.33.

Appellant contends in her first point on appeal that the probate court erred in determining that her claim against the estate was based on an oral contract of employment. Appellant contends that Dr. Kinkead's note dated August 7, 1989, is clearly a written promise to pay legal services rendered in connection with his easement lawsuit.

In support of her argument that an original debt is a sufficient legal consideration for a subsequent new promise to pay, appellant cites *Kitchens* v. *Evans*, 45 Ark. App. 19, 870 S.W.2d 767 (1994), where this court stated:

The original debt, indeed, is a sufficient legal consideration for a subsequent new promise to pay it, made either before or after the bar of the statute is complete. But, in order to continue or revive the cause of action after it would otherwise have been barred by the statute, there must be either an express promise of the debtor to pay the debt, or else an express acknowledgment of the debt, from which his promise to pay may be inferred.

*Kitchens* v. *Evans*, 45 Ark. App. at 23-24, 870 S.W.2d at 769 (quoting *Morris* v. *Carr*, 77 Ark. 228, 232, 91 S.W. 187, 189

(1905)). Appellant also cites *Sims* v. *Miller*, 151 Ark. 377, 383, 236 S.W. 828 (1922), which held, in an action on a written contract witnessed by correspondence, that the five-year statute of limitations applies although an account is filed specifying the items on which the three-year statute would have applied if the action had been brought on account. Appellant also relies on *H.B. Deal & Co.* v. *Bolding*, 225 Ark. 579, 283 S.W.2d 855 (1955), for its holding that the fact that oral proof is required to establish the amount due under a written contract does not prevent the five-year statute of limitations from applying.

 The note on which appellant relies as creating a written contract from Dr. Kinkead to pay her legal fees is ambiguous at best. The note merely acknowledges that Dr. Kinkead owes something and does not specify the amount or the debt. The general rule is that, before a contract may be enforceable, it must be definite and certain in all of its terms. *Welch* v. *Cooper*, 11 Ark. App. 263, 670 S.W.2d 454 (1984). Parties, however, by their conduct, can enable a court to give substance to an indefinite term of a contract, and the court looks to the conduct of the parties to determine what they intended. Here, the probate court referencing the conduct of the parties, found that appellant had failed to prove that there was ever an agreement between the parties that appellant would be paid for her legal services. Probate cases are tried *de novo* on appeal, and the findings of the probate judge will not be reversed unless they are clearly erroneous, giving due deference to his superior position to determine the credibility of the witnesses and the weight to be accorded their testimony. *Gilbert* v. *Gilbert*, 47 Ark. App. 37, 883 S.W.2d 859 (1994). Based on the evidence that was produced in this case, we do not think the chancellor's finding on this point is clearly erroneous.

Although appellant argues that the amount of her fees were shown by her written statements attached to her claim and her testimony, appellant cannot rely on her written fee statement because she admitted that it was never sent to Dr. Kinkead. As for her reliance on her own testimony to establish an agreement by Dr. Kinkead to pay her attorney's fees, the probate judge found that she was not a credible witness. Appellant's admissions at the hearing support his finding.

Appellant admitted that no bill for her services was ever

sent to Dr. Kinkead, although he wrote her the note on August 7, 1989, and did not die until August 1, 1993. When questioned by the court as to why she did not send Dr. Kinkead a bill back in 1989, she replied that her mother-in-law had died in 1989 prior to the easement trial; that her husband's sister had a baby and Dr. Kinkead was in the process of buying that sister a mobile home; that he bought a mobile home for another sister, Carol Ann; and that she felt sorry for the man and did not want to push him. Appellant also admitted, however, that she and her husband had filed an adverse possession claim against Dr. Kinkead's estate; seeking possession of the same two acres for which Dr. Kinkead had sought an easement in the lawsuit in which she represented him; that their adverse possession claim against the estate alleged that she and her husband had adversely possessed against Dr. Kinkead since 1986, seven years prior to his death and during the time she represented him in the easement action; and that she and her husband had received a $50,000.00 offer for Dr. Kinkead's two acres. She also admitted that Dr. Kinkead's will, dated January 29, 1990, disinherited her husband and that her husband has challenged the will, claiming that Dr. Kinkead was incompetent to make a will and unduly influenced. She also admitted that her claim against the estate and the adverse possession case were filed after her husband was advised by the executrix that he had been disinherited.

Appellant's second point contends that the probate court erred in finding that the three-year statute of limitations was applicable to her claim filed against the estate. We do not address this point because the probate court found that appellant failed to prove that an agreement existed between the parties, and, for the reasons previously discussed, we cannot say the court's finding in this regard is clearly erroneous.

Appellant's final point goes to the court's award of sanctions under Rule 11 of the Arkansas Rules of Civil Procedure. This rule provides in part:

> The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith

argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

Appellant argues that, because her claim was based on a written promise to pay and was brought within five years, her claim was proper, and it was error to award sanctions. In awarding sanctions, the probate judge stated in his letter opinion that the claim should not have been brought and that Rule 11 sanctions were appropriate in this matter.

We infer from the probate court's letter opinion that he found appellant's conduct in representing Dr. Kinkead while at the same time she was attempting to take his property by adverse possession to be, at a minimum, a serious conflict of interest. While we agree with him in this regard, we cannot say her conduct in filing a claim against the estate for legal fees was a violation of Rule 11. Rule 11 is not intended to permit sanctions just because the court later decides that the lawyer was wrong. *Crockett & Brown, P.A.* v. *Wilson*, 321 Ark. 150, 901 S.W.2d 826 (1995). Accordingly, the judgment is modified to delete the imposition of sanctions.

Affirmed as modified.

MAYFIELD and ROGERS, JJ., agree.