COMMERCIAL STANDARD INS. CO. *v.* MOORE.

5-3210                                                          376 S. W. 2d 675

Opinion delivered March 23, 1964.

*Moses, McClellan, Arnold, Owen & McDermott,* By *Wayne M. Owen,* for appellant.

*Spitzberg, Bonner, Mitchell & Hays,* By *Henry E. Spitzberg* and *Allan W. Horne,* for appellee.

ED. F. McFADDIN, Associate Justice. This litigation involves the liability of appellant on a title insurance policy. The appellees, James R. Moore and Marie L. Moore, his wife, filed this action against the appellant, Commercial Standard Insurance Company (hereinafter called "Commercial"), to recover for loss or damage sustained by the Moores. The complaint alleged that Commercial had issued to the Moores a policy of title insurance to protect the Moores against loss, *inter alia,* from materialmen's and mechanics' liens, that Commercial had failed to protect the Moores, who had been required to pay the sum of $8,066.40, for which recovery was sought, along with penalty and attorney's fees. The defenses of Commercial were, *inter alia:* (a) that the policy originally issued to the Moores did not protect them against materialmen's and mechanics' liens; and (b) that the agent of Commercial had neither the power nor the authority to change the policy, as was done. The cause was tried to a jury and resulted in a verdict and judgment for the Moores; and on this appeal Commercial urges these four points:

"I. At the conclusion of all of this evidence, the Court should have directed a verdict for the defendant.

"II. When Commercial Standard Insurance Company, through Beach Abstract & Guaranty Company, issued the policy of title insurance sued on herein, the pertinent parts of paragraph 6 of the policy sued on were in full force and effect, the same being: 'VI. Nothing contained in this policy shall be construed as insuring * * * (6) against loss or damage by reason of mechanics' or materialmen's liens, liens of contractors, subcontractors, or other liens arising out of the construction

or repair of buildings and improvements on the property, the title to which is hereby insured, not filed of record at the effective date of this policy * * *' and no suit or other action was ever brought to make noneffective this writing, and it could not be reformed in a court of law.

"III. Beach Abstract & Guaranty Company was without authority to alter paragraph VI of the policy sued on in any manner and even had it been authorized, an alteration after the loss had occurred would not be effective for lack of consideration.

"IV. The Court erred in giving over the general and specific objections of the appellant, appellees' Instruction No. 1."

I. *Appellant's Motion For Directed Verdict.* This necessarily involves a recital of the salient evidence. In October 1961 the Moores were buying a lot, in a new addition to Little Rock, on which a house was in the course of construction. The Moores employed Mr. Homer Tanner as their attorney to examine the abstract of the property. When he learned that construction was in progress, Mr. Tanner advised the Moores that only by a title insurance policy could they obtain full and safe protection against the possibility of materialmen's and mechanics' liens. At the Moore's request Mr. Tanner called Beach Abstract & Guaranty Company (hereinafter called "Beach") in Little Rock and explained the situation of the Moores to Mr. Cathey of Beach and inquired whether Beach would write a policy of title insurance to protect the Moores against the possibility of materialmen's and mechanics' liens attaching to the property they were buying. Mr. Cathey answered in the affirmative, and Tanner told the Moores to deal with Mr. Cathey of Beach in closing the matter. After Mr. Tanner furnished his title opinion and the above information, his services were completed. The Moores subsequently closed the transaction through Beach by paying the balance in full for the purchase price and by receiving from Mr. Cathey a policy of title insurance furnished by Beach as agent of Commercial and dated November 22, 1961.

Some time in January 1962 the Moores were served with notice of materialmen's and mechanics' liens. They took these notices to Mr. Tanner, and he called Mr. Cathey at Beach's office and informed him of the lien notices. At that time Mr. Cathey informed Mr. Tanner that the policy as issued did not protect the Moores against materialmen's and mechanics' liens. Whereupon Mr. Tanner and the Moores went to the Beach office and laid the full facts before the President of that company. They exhibited the policy that Commercial had issued; and Section 6 of that policy provided, *inter alia:* *"Nothing contained in this policy shall be construed as insuring* * * * (6) *against loss or damage by reason of mechanics' or materialmen's liens, liens of contractors, sub-contractors, or other liens arising out of the construction or repair of buildings and improvements on the property, the title to which is hereby insured, not filed of record at the effective date of this policy."* When Mr. Tanner explained the full situation to the President of Beach and told him that the main purpose for the Moores taking the title insurance was to obtain protection against materialmen's and mechanics' liens, the President of Beach directed Mr. Cathey to strike from the policy the above quoted and italicized language. This was done and initialed by Mr. Cathey.

Notwithstanding all the above, Commercial refused to protect the Moores against materialmen's and mechanics' liens and they were compelled to pay the amount that they sued for herein. There was evidence from which the jury could have found—as it evidently did—that Beach was the general agent of Commercial; and there was evidence that Commercial did issue title insurance policies that would protect against materialmen's and mechanics' liens. We will discuss later the authority of Beach as general agent; but under the evidence as we have detailed it in the light most favorable to support the verdict, as is our rule,[1] we conclude that a case was made for the jury and the Court was correct in refusing to direct a verdict for Commercial.

[1] *Reddell* v. *Norton*, 225 Ark. 643, 285 S. W. 2d 328.

II. *Necessity Of Reformation In A Court Of Equity.* In its second point Commercial urges that the policy as originally issued contained the provision previously quoted to the effect that there was no insurance against materialmen's and mechanics' liens; and that the Moores could not sue on the policy in a court of law until they first had it reformed by a court of equity. We find no merit in this contention because the parties could modify and change the contract between themselves, and if Beach was the general agent of Commercial (as we will discuss in Topic III, *infra*), then Beach had authority to make the contract state what the parties originally agreed upon. In *Mason* v. *Jarrett,* 218 Ark. 147, 234 S. W. 2d 771, we held that parties could voluntarily reform their contracts, saying: ''Certainly the parties may do voluntarily that which a court of equity would have compelled them to do.'' In 29 Am. Jur. p. 701, ''Insurance'' § 337, the holdings are summarized: ''In the absence of statutory or contract provisions, or of restrictions upon the power known to the insured, a general agent or agent having power to enter into contract of insurance in behalf of the insurer has authority to modify, with the consent of the insured, contracts already in existence. An agent authorized to make contracts of insurance may, at any time during the continuation of his agency, even though subsequent to the loss, correct a policy issued by him to conform to the agreement of the parties.''

Thus, when Mr. Tanner and the Moores went to the President of Beach in January 1962 and explained the situation, the President of Beach reformed the policy to make it speak the truth in accordance with the conversation between Cathey and Tanner, which was the beginning of the dealings of the Moores with Commercial. The original policy is in the transcript before us, and the clause that we have previously copied is deleted and initialed. That was full reformation. There was no necessity for the Moores to go into equity to get the policy reformed because it was already reformed.

III. *The General Agency Of Beach.* This is the main issue in this lawsuit. If Beach was the general

agent of Commercial, then of course the reformation of the policy was validly accomplished. Arkansas is one of the States that makes the distinction between the authority of general agents and special agents of insurance companies; and we hold that a general agent is one who has authority to transact all business of the company of a particular kind and whose powers are *prima facie* coextensive to the business entrusted to his care. *Phoenix Assurance* v. *Boyette,* 77 Ark. 41, 90 S. W. 284; *Reserve Loan Life Ins. Co.* v. *Compton,* 190 Ark. 1039, 82 S. W. 2d 537; and *Dixie Life Ins. Co.* v. *Hamm,* 233 Ark. 320, 344 S. W. 2d 601. See also 29 Am. Jur. p. 550, "Insurance" § 151. In *Phoenix Assurance Co.* v. *Boyette, supra,* we said of the insurance agent there involved:

"But it is urged that the authority of the agent was limited, and he was not authorized to issue a policy such as is claimed this should have been. This view is not sustained by the facts. Bridewell, as agent for the company, kept policies for execution and delivery, passed upon applications, received premiums, counter-signed and issued policies, and was therefore a general agent for such purposes. Having the conceded power to issue a policy on all the cotton in the warehouse, he undoubtedly had the authority to issue a policy on any portion of it. *Insurance Co.* v. *Brodie,* 52 Ark. 11; *Phoenix Insurance Co.* v. *Public Parks Amusement Co.,* 63 Ark. 187; *German-American Insurance Co.* v. *Humphreys,* 62 Ark. 348."

In *Dixie Life Ins. Co.* v. *Hamm, supra,* we quoted with approval from American Jurisprudence:

" 'Broadly speaking, one must be regarded as the general agent of an insurance company if he is authorized to accept risks, to agree upon and settle the terms of insurance, and to carry them into effect by issuing and renewing policies. Accordingly, agents have been regarded as general agents where they fully represent the insurance company in a particular district and are authorized to solicit insurance, receive money and premiums, issue and renew policies, appoint subagents, and adjust losses.' "

In the case at bar it was shown that Commercial furnished policies to Beach; that one form would insure against materialmen's and mechanics' liens and another form would not; that Beach was authorized to accept risks as it saw fit and to agree upon and settle the terms of the insurance, using either form, as Beach thought appropriate; and that Beach signed and issued policies and collected the premiums. The words, "State Agent," as applicable to Beach, were printed on the Commercial binders issued to the Moores in this case; and the contract between Commercial and Beach introduced in evidence herein says that Commercial appoints Beach "its exclusive general agent for the State of Arkansas, with the exception of Miller County, which will be non-exclusive, with authority to receive applications for title insurance upon all lands situated in the State of Arkansas, to issue reports on the condition of titles to land described in such applications, to receive and collect such premiums for title insurance and such abstract and/or attorney's fees as are necessarily incident thereto, to counter-sign and deliver policies of title insurance and to nominate sub-agents for approval of first party;..."

In the light of all of the above, the Trial Court certainly committed no error against Commercial in submitting to the jury the question of whether Beach was the general agent of Commercial; and the jury verdict on this point is supported by abundant evidence. With Beach the general agent of Commercial we have the answer to the questions previously discussed.

IV. *Appellee's Instruction No. 1.* This was an instruction on the apparent scope of authority of Beach as the agent of Commercial. The instruction is lengthy and no useful purpose would be served by copying it here. It is sufficient to say that we find no error in this instruction as against the objections made by the appellant.

Affirmed.