COLUMBIA MUTUAL CASUALTY INSURANCE
COMPANY *v.* Trehlan INGRAHAM

CA 93-893 883 S.W.2d 868

Court of Appeals of Arkansas
En Banc
Opinion delivered October 5, 1994
[Rehearing denied November 9, 1994.*]

---

*Pittman, Robbins, and Rogers, JJ., would grant rehearing.

24

*Roy & Lambert*, by: *Jerry L. Lovelace*, for appellant.

*John W. May*, for appellee.

JAMES R. COOPER, Judge. The appellee in this insurance contract case filed an action against the appellant insurance company to recover insurance proceeds for the loss of a dwelling by fire. After a jury trial, a judgment in the amount of $42,048.75 was entered for the appellee. From that decision, comes this appeal.

For reversal, the appellant contends that the trial court erred in refusing to direct a verdict in favor of the appellant, in admitting evidence regarding the appellant's processing of insurance applications, and in submitting to the jury the issue of the insurance agent's authority to modify the insurance binder. We affirm.

The record reflects that, on February 20, 1989, the appellee applied to the appellant, through the Rowe Insurance Agency, of Lincoln, Arkansas, for fire insurance covering a house near Springdale. Elizabeth Spears, an employee of the Rowe agency, filled out the application from information given to her by the appellee. The appellant gave the appellee a binder on the property, which stated:

The Company binds insurance as above applied for in accor-

dance with all the terms and conditions of the policy regularly issued by the Company in the state in which the property is located. It is a condition of this binder that it shall be void if a policy of the Company is issued or coverage shall cease if it is otherwise terminated. In no event shall this binder continue in force beyond 30 days from its inception date. This binder shall not be valid unless signed by the duly authorized agent of the Company.

On the back of the application, Ms. Spears wrote the word "no" in response to questions asking if any member of the appellee's household had ever been convicted of a crime and the number of fire losses the appellee had had. In fact, however, the appellee had previously been convicted of a number of felonies, including arson. The appellee signed this portion of the application.

On March 6, 1989, the appellant assertedly sent a notice of rejection of the appellee's application to the Rowe agency providing that it would provide no coverage on the property after 12:01 a.m., March 22, 1989. The reason for this rejection was stated as follows: "Due to the acreage and usage of it, this dwelling should be submitted on a Farm Fire Application." Later, the Rowe agency denied ever having received this notice of rejection, and its message was not communicated to the appellee.

The appellee's house was destroyed by fire on April 16, 1989. After the appellant denied coverage for the loss, the appellee brought this action against the appellant.

At trial, the appellee testified that he went with his friend James Rhine to the Rowe agency. He stated that Ms. Spears filled out the application based upon his answers and that, when asked about his criminal record by Ms. Spears, he told her that he had been convicted of two felonies, including arson. He stated that, when he left the agency, he believed that he had insurance coverage because he asked Ms. Spears how long it took for the insurance to go into effect:

Q What did she tell you?

A She said, "The minute you step out the door it's in effect. She said, "If your house burns down or blows away, or anything happens to it, you're covered."

Q Well, did she say anything to you about how long the coverage would last?

A It was supposed to last for a year.

Q Had you paid her a premium for a year?

A Yes, sir.

Q Did Elizabeth Spears ever mention the word "binder" to you?

A No, sir.

The appellee further stated that he subsequently called to check on the policy and someone at the agency informed him that he would have it any day. James Rhine testified that he was present when Ms. Spears asked the appellee if he had had any felony charges and that the appellee had informed her that he did.

At the conclusion of the appellee's case, the appellant moved for directed verdict on the ground that the language of the binder, quoted above, clearly demonstrated that there was no coverage for the fire loss. The appellant also argued that there was no allegation that the appellant had done anything that would lead the appellee to believe the binder had been extended beyond thirty days and that the Rowe agency, as a soliciting agent, could not extend coverage or waive any of the policy requirements. The trial judge denied the motion, noting that the appellee had testified that Ms. Spears had told him that the insurance was to last a year; that such a contract can be orally modified by the parties; and that, under certain circumstances, even a soliciting agent can bind the company.

Elizabeth Spears testified that she did not specifically remember talking to the appellee but assumed that she did not tell him that the binder was extended beyond thirty days. She stated that, ordinarily, she does not tell people that the binder with Columbia is limited to thirty days and that, if people ask, she tells them how long their coverage is to last. She stated that the appellee had told her he had never been convicted of a crime and, if he had told her that he had been convicted of arson, she would have stopped filling out the application. She added that she might have submitted it to the appellant as non-bound.

Over the appellant's objection on the ground of relevance, Ms. Spears testified that, ordinarily, the agency did not receive a policy back from the appellant within the thirty-day time frame, and that it was her opinion that a binder was good beyond thirty days if the agency did not receive notice of rejection or acceptance. She stated that she may have told Mr. Ingraham that. She further testified that she never notified the appellee that his application had been rejected because she did not receive a rejection notice from the appellant. She stated that it was common practice upon receipt of a rejection to resubmit the application to some other carrier after first contacting the applicant. She also stated that she held herself out as having authority to sell insurance coverage from the date of application until it was either accepted or rejected, and that it would sometimes take longer than thirty days to hear from the appellant about its decision on an application. She also stated that it would not surprise her if the appellee had thought that, when he left the office, he had coverage for a period of one year.

Penny Moore, an underwriter for the appellant, testified that the appellant will not issue a policy to someone convicted of arson, and that its independent agents are not allowed to bind coverage for someone convicted of arson. She stated that the appellant never issued a policy to the appellee and that it was not the appellant's policy to extend its binders beyond thirty days. She testified that the application was received in her office February 27, 1989, and that the rejection went out on March 6, 1989. She stated that it is the company's policy of sending out such rejections within thirty days and that applications are a priority. She further stated that a normal turn-around time is approximately two weeks, but that this application was processed within nine days.

At the conclusion of the evidence, the appellant renewed its motion for directed verdict and objected to several jury instructions regarding oral modification of contracts; the principles of agency, real or apparent; and soliciting or general agents. The jury returned a verdict for the appellee, and a judgment on this verdict was entered on March 25, 1993, in the amount of $42,048.75.

The appellant first contends that the circuit court erred in fail-

ing to direct a verdict in its favor because the appellee presented no evidence that coverage was extended beyond the thirty-day binder as stated in the application. The appellant bases this argument on its assertion that the appellee presented no evidence of any oral modification and admitted that he was never specifically told that the binder would be extended beyond thirty days. The appellant also argues that, because no communication occurred between the appellee and Ms. Spears regarding the extension of the thirty-day binder, it was impossible for there to have been an oral modification of the insurance binder. We do not agree.

In reviewing the denial of a motion for a directed verdict, we give the proof its strongest probative force. *Lazelere* v. *Reed*, 35 Ark. App. 174, 180, 816 S.W.2d 614 (1991). Such proof, with all reasonable inferences, is examined in the light most favorable to the party against whom the motion is sought; if there is any substantial evidence to support the verdict, we will affirm the trial court. *Id.; Washington County Farmers Mut. Fire Ins. Co.* v. *Phillips*, 34 Ark. App. 198, 201, 807 S.W.2d 940 (1991). Substantial evidence is that evidence which is of sufficient force and character that it will, with reasonable certainty and precision, compel a conclusion one way or another; it must force or induce the mind to pass beyond a suspicion or conjecture. *Bank of Malvern* v. *Dunklin*, 307 Ark. 127, 129, 817 S.W.2d 873 (1991); *Newberry* v. *Johnson*, 294 Ark. 455, 458, 743 S.W.2d 811 (1988). Consequently, a motion for directed verdict should be granted only if the evidence so viewed would be so insubstantial as to require a jury verdict for the party to be set aside. *Bice* v. *Hartford Accident & Indem. Co.*, 300 Ark. 122, 124, 777 S.W.2d 213 (1989). A directed verdict should not be granted where the evidence is such that fair-minded persons might reach different conclusions. *Mankey* v. *Wal-Mart Stores, Inc.*, 314 Ark. 14, 16, 858 S.W.2d 85 (1993).

It is well settled that a written contract may be modified by a later oral agreement. *O'Bier* v. *Safe-Buy Real Estate Agency, Inc.*, 256 Ark. 574, 576, 509 S.W.2d 292 (1974); *Cate* v. *Irvin*, 44 Ark. App. 39, 43, 866 S.W.2d 423 (1993); *Prudential Ins. Co. of America* v. *Stratton*, 14 Ark. App. 145, 149, 685 S.W.2d 818 (1985). The oral modification of a written contract must be established by clear and convincing evidence; this require-

ment however, does not mean that the evidence must be uncontradicted. *City Nat'l Bank of Fort Smith* v. *First Nat'l Bank and Trust Co. of Rogers*, 22 Ark. App. 5, 10, 732 S.W.2d 489 (1987); *see Hoover* v. *Arkoma Prod. Co.*, 29 Ark. App. 238, 241, 780 S.W.2d 585 (1989). It is not uncommon for an oral modification to be asserted by one party and denied by the other. *Freeman* v. *Freeman*, 20 Ark. App. 12, 15, 722 S.W.2d 877 (1987); *Askew Trust* v. *Hopkins*, 15 Ark. App. 19, 23, 688 S.W.2d 316 (1985). Whether there was a modification is a question of fact for the jury. *Id. Accord Afflick* v. *Lambert*, 187 Ark. 416, 419, 60 S.W.2d 176 (1933).

The appellant argues that *Manufacturers Casualty Insurance Co.* v. *Hughes*, 229 Ark. 503, 316 S.W.2d 827 (1958), is precisely on point with the facts of this case. In that case, the applicant, Dan Spencer, sought insurance through the Assigned Risk Plan on June 26, 1956. The application and premium arrived at the Risk Plan office on June 27, 1956, and the Risk Plan manager forwarded a notice to Manufacturers Casualty that the risk had been assigned to it. This notice was received by Manufacturers Casualty on June 29, 1956. The Plan required that the risk must be bound or a policy issued within two working days of the receipt of notice. June 29 was a Friday, and the insurance company bound coverage on July 2. The applicant in that case, however, had an accident on June 27, resulting in the death of Charles Hughes. Mr. Hughes' survivors sued Mr. Spencer, who demanded that the insurance company defend the suit. The company declined to do so. Mr. Hughes' survivors recovered a judgment against Mr. Spencer and then sued the insurance company. At the conclusion of the plaintiffs' case and all of the testimony, the company unsuccessfully moved for a directed verdict. The jury found that the insurance agent (Mr. Leonard) had represented to Mr. Spencer that his insurance became effective upon payment of the premium to him. The insurance company appealed from the judgment entered against it, and the Supreme Court reversed. The Court discussed the purposes of the Assigned Risk Plan and noted that it allowed the insurance company two working days within which to issue a binder or policy, stating that:

> We have concluded that Spencer, at the time of the accident, was not insured by the appellant. This conclusion is reached because Spencer was not covered under the

terms of the application executed by him and sent in to St. Louis, and as a matter of law, Leonard was without authority to orally bind the risk. At the top of the application form, which was signed by Spencer, appears the word, in large black type, "Important." Immediately beneath this word, appears the following:

"This application must be filled out in duplicate and accompanied by the investigation fee or deposit premium prescribed in the Assigned Risk Plan. Every item must be completed and answers typewritten or written legibly in ink. If you are eligible for insurance under the Plan, the allowance to the producer of record for services rendered in connection with this application will be paid by the company to which the risk is assigned.

*This application does not constitute a binder of insurance. Coverage becomes effective only in accordance with the terms of the Plan."*

The application lists certain questions relative to the occupation of the applicant, the purposes for which the car will be used, and certain information relative to the driving record of applicant. The testimony reflects that these questions were asked Spencer by Leonard, and the answers inserted by the latter, following which, the application was handed to Spencer, and signed by him. Spencer stated that he signed the application, but did not read it before signing. His testimony was to the effect that he "understood" he had insurance as of that date, though he admitted that he knew he was not being insured by Allstate, and was not told by Leonard that the latter represented Manufacturers Casualty; he would neither affirm nor deny that Leonard explained to him that coverage would only become effective in accordance with the terms of the Plan, and that the application was not a binder. Leonard testified that he explained the Plan to Spencer, and told applicant that he had best be careful because "* * * you won't have any insurance for two or three days, until you get a letter back from the company that gets your assignment or gets you a policy back." He further stated that he did not know of Manufacturers Casualty Insurance Company at the time of

> taking Spencer's application. Under the view we take, the conversation between the parties, and what Leonard may have said, or left unsaid, are immaterial, and the court accordingly erred in submitting the interrogatories to the jury. The application very clearly and emphatically provides that it does not constitute a binder of insurance.

*Id.* at 509-10.

The Supreme Court further stated that, "by simply reading the opening paragraph, Spencer would have known that he was not then covered." *Id.* at 511. It went on to add that, by becoming a member of the Plan, the insurance company had not designated Mr. Leonard as its agent. Therefore, the Court reasoned, Mr. Leonard had not given Mr. Spencer a valid "oral binder." *Id.* at 511. The Court stated that:

> To hold otherwise would have the effect of making each licensed casualty insurance agent in the state of Arkansas, the potential general agent of every casualty company doing business in the state. How can one be a general agent for, issue a policy, or bind, a company that he has never heard of?

*Id.* at 513.

We think that *Manufacturers Casualty, supra,* is to be distinguished from the instant case because the Rowe agency was, undeniably, at least a soliciting agent for the appellant; the Assigned Risk Plan is not involved; and the appellee was clearly bound when he left the Rowe agency. Furthermore, it cannot be said that the Rowe agency was without authority to orally extend the binder as a matter of law in the case at bar. Under these circumstances, we cannot say that the trial court erred in refusing to direct a verdict in favor of the appellant.

In its second point on appeal, the appellant argues that the circuit court erred in admitting into evidence testimony about the appellant's turn-around time for processing applications over the appellant's objection for lack of relevance. In response, the appellee notes that the appellant did not normally return insurance applications within the thirty-day binder period and that Ms. Spears testified that she had thought the binder was good

beyond the thirty-day period if the company had not returned an acceptance or rejection. Therefore, the appellee argues, this evidence was relevant as to whether an oral modification of the binder occurred.

Under Ark. R. Evid. 401, evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *Bice* v. *Hartford Accident & Indem. Co.*, 300 Ark. at 125. The trial court has discretion in determining the relevance of evidence, *Simpson* v. *Hurt*, 294 Ark. 41, 42, 740 S.W.2d 618 (1987), and its decision on such a matter will not be reversed absent a manifest abuse of that discretion. *Wood* v. *State*, 20 Ark. App. 61, 65-66, 724 S.W.2d 183 (1987). *See also Oxford* v. *Hamilton*, 297 Ark. 512, 515, 763 S.W.2d 83 (1989); *Waeltz* v. *Ark. Dep't of Human Servs.*, 27 Ark. App. 167, 171, 768 S.W.2d 241 (1989). Given Ms. Spears' testimony and the broad discretion allowed to trial courts in the admission of evidence, we cannot say the circuit judge abused his discretion in admitting this evidence.

Next, the appellant argues that the circuit court erred in submitting the issue of the nature and extent of the agent's authority to the jury because the appellee presented no evidence regarding such authority. The appellant asserts that the trial court erroneously instructed the jury on the issues of general and soliciting agents and apparent agency. The appellant also argues that the appellee presented no proof that Ms. Spears had the authority, real or apparent, to bind the appellant to an oral modification of the binder. Noting that the only evidence presented regarding the nature of the agency relationship between the Rowe agency and the appellant was provided by the testimony of Ms. Spears, who testified that she had the authority to take applications, bind coverage, take premiums, and sell insurance, the appellant also argues that the appellee failed to present any evidence which would differentiate the Rowe agency as a general agent rather than a soliciting agent for the appellant.

The relation of agency is created as the result of conduct by two parties manifesting that one of them is willing for the other to act for him subject to his control, and that the other consents to so act. *First Commercial Bank* v. *McGaughey Bros.,*

*Inc.*, 30 Ark. App. 174, 177, 785 S.W.2d 236 (1990). The principal must in some manner indicate that the agent is to act for him, and the agent must act or agree to act on the principal's behalf and subject to his control. *Id.* Ordinarily, agency is a question of fact to be determined by the jury; but where the facts are undisputed, and only one inference can be reasonably drawn from them, it becomes a question of law. *Id.*

 Whether an agent is acting within the scope of his actual or apparent authority is a question of fact for the jury to determine. *Henry* v. *Gaines-Derden Enters., Inc.*, 314 Ark. 542, 551, 863 S.W.2d 828 (1993); *Crail* v. *N.W. Nat'l Ins. Co.*, 282 Ark. 175, 176, 666 S.W.2d 706 (1984); *Chadwell* v. *Pannell*, 27 Ark. App. 59, 65, 766 S.W.2d 38 (1989). Arkansas is one of the states that makes a distinction between the authority of general and special agents of insurance companies. *Hunt* v. *Pyramid Life Ins. Co.*, 21 Ark. App. 261, 267, 732 S.W.2d 167 (1987). A general agent is one who has authority to transact all business of the company of a particular kind and whose powers are coextensive to the business entrusted to its care. *Arkansas Poultry Fed'n Ins. Trust* v. *Lawrence*, 34 Ark. App. 45, 52, 805 S.W.2d 653 (1991). A general agent is ordinarily authorized to accept risks, to agree upon the terms of insurance contracts, to issue and renew policies, and to change or modify the terms of existing contracts. *Id.* A soliciting agent, on the other hand, is ordinarily authorized to sell insurance, to receive applications, and to forward them to the company or its general agent, to deliver the policies when issued, and to collect premiums. *Id.* A soliciting agent is not invested with the authority to make contracts on behalf of the insurer. *Id.* The burden is on the plaintiff to show that a soliciting agent has real or apparent authority to bind his principal by contract. *Id. See also Constitution Life Ins. Co.* v. *M.D. Thompson & Son, Inc.*, 251 Ark. 784, 787, 475 S.W.2d 165 (1972); *Commercial Standard Ins. Co.* v. *Moore*, 237 Ark. 845, 850, 376 S.W.2d 675 (1964). In *Holland* v. *Interstate Fire Ins. Co.*, 229 Ark. 491, 493, 316 S.W.2d 707 (1958), the court stated that a soliciting agent has no authority to change or waive the terms of policies. *Accord Security Ins. Corp. of Hartford* v. *Henley*, 19 Ark. App. 299, 303-04, 720 S.W.2d 328 (1986). It has been held, however, that one dealing with an admitted agent may presume, in the absence of notice to the contrary, that he was a general agent,

clothed with authority coextensive with its apparent scope. *Landmark Sav. Bank, F.S.B.* v. *Weaver-Bailey Contractors, Inc.*, 22 Ark. App. 258, 264, 739 S.W.2d 166 (1987).

In the case at bar, the appellee testified that he purchased the insurance from Ms. Spears; that she recorded his information and completed his application for insurance; and that she advised him with regard to changes that needed to be made to the house's heating system. Furthermore, Ms. Spears admitted that she had held herself out as having authority to take the appellee's premium payment and sell insurance coverage from the date that the premium was paid until the application was either accepted or rejected. Under these circumstances, we hold that the trial court did not err in submitting the question of agency to the jury, and we affirm.

Affirmed.

PITTMAN, ROBBINS, and ROGERS, JJ., dissent.

JUDITH ROGERS, Justice, dissenting. I respectfully dissent from the majority's holding that the trial court was not in error in refusing to direct a verdict in favor of appellant with regard to the issue of whether the thirty-day binder was orally modified to be extended beyond thirty days. The majority found that the Rowe Agency could exercise the authority to orally extend the binder as a matter of law in this case. I disagree. Despite whether Ms. Spears was a general agent or a soliciting agent, there is no proof in the record to show that either Ms. Spears or appellee ever discussed the binder in question let alone orally modified the binder.

A contract may be modified, but it is essential that both parties agree to the modification and its terms. *Moss* v. *Allstate Ins. Co.*, 29 Ark. App. 33, 776 S.W.2d 831 (1989). Also, an oral modification of a written contract must be established by clear and convincing evidence. *City Nat'l Bank of Fort Smith* v. *First Nat'l Bank and Trust Co. of Rogers*, 22 Ark. App. 5, 732 S.W.2d 489 (1987).

In this case, there was no evidence in the record that appellee ever discussed the binder with Ms. Spears, the insurance agent for the Rowe Agency. To the contrary, appellee testified that Ms.

Spears did not tell him anything about a binder nor mention the word binder to him. He stated that no one ever told him that the binder or application would go beyond thirty days. The only testimony from appellee concerning the length of his coverage was his statement that he *thought* he had coverage for a year. Ms. Spears testified that she never told appellee that he had insurance beyond thirty days as stated in the binder. Based on the facts in this case, it is clear that *both* parties did not agree to a modification of the binder. Also, the evidence is not clear and convincing that an oral modification took place. Quite the opposite, the evidence establishes that the binder was never discussed by Ms. Spears or appellee. After reviewing the record, despite the fact whether Ms. Spears was a general agent or soliciting agent, there is no evidence that an oral modification took place in this case or that both parties agreed to modify the binder.

PITTMAN and ROBBINS, JJ., join.