Jerry Lee STOGSDILL *v.*
James E. STOGSDILL, Jr.,
and Janet Stogsdill Osmon,
Co-Executors of the Estate of
Elizabeth Stogsdill, *Deceased*

CA 01-829                                         68 S.W.3d 324

Court of Appeals of Arkansas
Division IV
Opinion delivered February 27, 2002

*Blackman Law Firm*, by: *Keith Blackman*, for appellant.

*Barrett & Deacon, P.A.*, by: *Berl Smith, Ralph W. Waddell*, and *Leigh M. Chiles*, for appellees.

WENDELL L. GRIFFEN, Judge. Jerry Lee Stogsdill appeals a Craighead County chancery court decision that issued a foreclosure decree on behalf of his siblings, James Stogsdill, Jr., and Janet Stogsdill Osmon, co-executors of the estate of their mother, Elizabeth Stogsdill, deceased, after finding that appellant owed his mother's estate $71,151.07 for personal loans secured by mortgages containing future-advance clauses. We affirm and hold that the chancellor properly found 1) that appellant's Chapter 12 bankruptcy petition tolled the statute of limitations on the estate's foreclosure action, 2) that appellant's post-bankruptcy personal debts fell outside the scope of his mother's will, and 3) that a future-advances clause in a 1984 mortgage attached to later personal loans made by decedent to appellant.

### Factual and Procedural History

On January 1, 1983, appellant borrowed $35,019.99 from his parents, Elizabeth and James Stogsdill, Sr. That same day, appellant executed a promissory note, secured by a mortgage on the East Half of the Southeast Quarter, Section 27, Township 14 North, Range 7 East.[1] This mortgage included a standard future-advances clause, which read as follows:

> The mortgage shall also be security for any indebtedness of whatsoever kind that the grantee or the holders or owners of this mortgage may hold against grantor by reason of future advances made hereunder, by purchase or otherwise, to the time of the satisfaction of this mortgage.

That same day, appellant and another brother, John, also issued a promissory note from their business, Stogsdill Brothers Farms, to their parents. The note, dated January 1, 1983, promised to pay the sum of $48,000, with interest thereon at ten percent per annum. The note was secured by a crop lien on all crops as well as a mortgage on the entirety of the Southeast Quarter of Section 27, Township 14 North, Range 7 East. This mortgage also included a future-advances clause with identical language to the mortgage individually executed by appellant.

---

[1] The 1983 mortgages erroneously describe the location of the property as Range 7 West rather than 7 East.

On October 23, 1984, appellant borrowed $18,907.50 from his parents. He executed a promissory note, secured by a mortgage to his parents on the East Half of the Southeast Quarter of Section 27, Township 14 North, Range 7 East. This mortgage, recorded in Book 61 at page 494 of the records of Craighead County, included the following future-advances clause:

> It is also agreed that this debt herein secured shall include not only the note, above recited, but also whatever sums may be due from the mortgagor to the mortgagee at the time of foreclosing this mortgage, whether such sums be for payment of taxes on these lands for release of liens or encumbrances, for fire insurance premiums, for protecting the title and possession of these premises, or for debts not incurred in respect of this land, such as personal account or unsecured note, or a judgment of any indebtedness of whatever sort or nature that may be due from mortgagor to mortgagee at the time of foreclosing this mortgage.

Following a series of unfortunate circumstances, appellant filed a voluntary Chapter 12 bankruptcy petition on January 3, 1989, and the land encumbered by the mortgages was included as a non-exempt asset. Appellant filed a reorganization plan on October 10, 1990, which listed his mother as a secured creditor who would retain the liens securing her claims. He also included a description of the mortgaged property as collateral. Although appellant included the debt to his mother in the reorganization plan, he chose not to make installment payments to his mother during the reorganization. Instead, he declared that his mother's claim was payable on demand after his discharge under the plan. Appellant continued to borrow money from his mother during his bankruptcy, with the loans ultimately totaling over $100,000. Although appellant was discharged from bankruptcy on December 13, 1996, the discharge order specifically excluded the debt appellant owed his mother.

On November 30, 1997, Mrs. Stogsdill died,[2] leaving appellees James E. "Jim" Stogsdill, Jr., and Janet Stogsdill Osmon as co-executors of her estate. Paragraph four of her will, executed April 3, 1996, read as follows:

---

[2] Appellant's father predeceased Mrs. Stogsdill.

FOUR: My late husband and I have made various loans to my sons JOHN W. STOGSDILL and JERRY LEE STOGSDILL, in connection with their acquisition of certain farmland and their farming operations. I give, devise, and bequeath all of my right, title and interest in the amounts receivable by me pursuant to said loans to JANET STOGSDILL OSMON and JAMES F. STOGSDILL, JR., and direct that said loans be repaid as follows: I direct that JOHN W. STOGSDILL shall pay the total sum of $24,000 to JANET STOGSDILL OSMON in full satisfaction of the indebtedness which he owes to me. Said amount shall be paid in annual installments of $2,400 over a period of ten years. I direct that JERRY LEE STOGSDILL shall pay the total sum of $24,000 to JAMES E. STOGSDILL, JR., in full satisfaction of the indebtedness which he owes to me. Said amount shall likewise be paid in annual installments of $2,400 over a period of ten years. The initial payments shall be due on or before the date of the first anniversary of my death, and each subsequent payment shall be due on or before the same date thereafter over the next nine years. The indebtedness of either or both JOHN W. STOGSDILL and JERRY LEE STOGSDILL may be prepaid at any time. Upon full payment of all indebtedness as directed above, the Executor of my estate, or JANET STOGSDILL OSMON and JAMES E. STOGSDILL, JR., or their respective heirs, administrators or assigns, shall release any existing mortgages in my favor upon the property of JOHN W. STOGSDILL and JERRY LEE STOGSDILL.

After reviewing their mother's business records and discovering the personal loans made by their mother to appellant during his bankruptcy, appellees filed suit against appellant seeking to recover the amount of the loans, or alternatively, to foreclose on the mortgages. Appellees did not seek recovery of farm-related loans. Appellant responded that all of the loans were for farm-related purposes, and that any amount in excess of $24,000 was precluded pursuant to the will. He also affirmatively pled the statute of limitations. Appellees filed an amended complaint seeking foreclosure against the real property described in the 1984 mortgage, and the case was transferred to chancery court.

At trial, Appellee Janet Osmon introduced into evidence checks that her mother had written to appellant, or written on his behalf, between 1990 and 1996. Osmon acknowledged that the 1983 and 1984 promissory notes were farm-related loans and testified that she did not seek recovery of the notes pursuant to her mother's will. However, she testified that she considered the mortgages securing the notes to be valid. Osmon further testified that

when her mother wrote a check that was farm-related, the check was noted as such.

Appellant testified that his mother had given him money for farm-related purposes and to make his bankruptcy payments. He testified that his mother never asked to be repaid and admitted that some of the money was used for living expenses. The family's certified public accountant testified that to the best of his knowledge, appellant had not repaid the loans.

The chancellor determined that 1) the loans were personal in nature so as to exclude their exemption under the will, 2) the repayment of the loans was not barred because the statute of limitations was tolled by appellant's action of filing for bankruptcy, 3) appellees were entitled to a judgment in the amount of $71,151.07, plus their costs and attorney's fees of $2,000, and 4) the mortgages contained future-advances clauses that secured payment of the judgment. The court entered a foreclosure decree that provided appellant thirty days to satisfy the judgment; otherwise, the decree provided for alternative foreclosure. This appeal followed. On appeal, appellant contends that the chancellor erred in determining 1) that appellant's bankruptcy petition tolled the statute of limitations on the estate's foreclosure action, 2) that appellant's post-petition bankruptcy debt fell outside the scope of his mother's will because the will provided that all indebtedness was satisfied upon appellant's payment of $24,000, and 3) that the future-advances clause of the 1984 mortgage attached to the personal loans.

*Standard of Review*

■ Chancery decisions are reviewed *de novo* on the record. *See Norman v. Norman*, 342 Ark. 493, 30 S.W.3d 83 (2000). Findings of fact are not reversed absent a determination that the finding is clearly erroneous, *i.e.*, we are left with a definite and firm conviction that a mistake has been committed. *See id.*

*Whether Bankruptcy Petition Tolled*
*Statute of Limitations*

Appellant begins by asserting that the automatic stay of the bankruptcy code only tolls the period of time on actions that

existed before the filing of a bankruptcy petition. Thus, he concludes that appellees' claims are barred under Arkansas Code Annotated § 16-56-105 (1987), which provides a three-year statute of limitations for unwritten contracts, or under Arkansas Code Annotated § 16-56-111 (Supp. 2001), a five-year statute of limitations for written obligations. We disagree.

■■ The filing of a bankruptcy petition operates as an automatic stay under certain circumstances, including:

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

> (4) *any act to create, perfect, or enforce any lien against property of the estate*;

> (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title.

11 U.S.C. § 362 (2000). (Emphasis added.) The automatic stay serves to prevent piecemeal litigation by allowing a debtor to centralize his affairs and creditors to unify their interests. *See Sunshine Dev. Inc. v. FDIC*, 33 F.3d 106 (1st Cir. 1994). The stay begins automatically and terminates automatically when the property is no longer property of the bankruptcy estate and the case is closed, dismissed, or until such time that a discharge is granted or denied. *See* 11 U.S.C. § 362(c)(1)-(4) (2000). While § 362 is an automatic stay provision, § 541 provides that the bankruptcy estate consists of all legal or equitable interests of the debtor in property at the time the debtor initiated the bankruptcy action. *See* 11 U.S.C. § 541(a)(1) (2000). Additionally, 11 U.S.C. § 1207(a)(1) (2000) states that the bankruptcy estate includes all property specified in

§ 541, plus all property that the debtor acquires after the bankruptcy action is commenced "but before the case is closed, dismissed or converted to a case under Chapter 7 of the bankruptcy code, whichever occurs first."

■ Applying the applicable bankruptcy law to the present case, appellant's mother could not have foreclosed on the mortgage once the automatic stay took effect, until December 13, 1996, the date of appellant's discharge from bankruptcy. The record indicates that appellant filed a bankruptcy reorganization plan in 1990, and listed the debt he owed to his mother, which was secured by two mortgages on the East Half of the Southeast Quarter of Section 27, Township 14 North, Range 7 East. This property was included in the bankruptcy estate. However, the reorganization plan stated that Mrs. Stogsdill's rights, except as modified by the plan, remained in effect and that appellant would repay his mother on demand after the plan. The mortgages included future-advance clauses, which served to encompass the loans provided to appellant post-petition. Pursuant to § 362(a)(4), Mrs. Stogsdill was precluded from enforcing or perfecting these post-petition loans, which were secured by property included in the bankruptcy estate. Because appellees filed their action two years after appellant's discharge from bankruptcy, the action was well within the three-year statute-of-limitations period or the five-year statute-of-limitations period.

### Whether Appellant's Post-Petition Debts Fell Outside Scope of Will

Next, appellant contends that the trial court erroneously found that certain debts resulted from personal loans rather than farm-related loans. To support his contention, appellant directs our attention to a sentence contained in paragraph four of his mother's will. This sentence reads, "I direct that Jerry Lee Stogsdill shall pay the total sum of $24,000 to James E. Stogsdill, Jr. in full satisfaction of the indebtedness which he owes me."

■ When considering the interpretation of a will, the intent of the testator is of utmost importance. See *Carpenter v. Miller*, 71 Ark. App. 5, 26 S.W.3d 135 (2000). Intent is ascertained from the four corners of the will; however, when the meaning of an expression is unclear, extrinsic evidence may be used. See *id.*

Here, appellant does not argue that paragraph four of his mother's will is ambiguous. Rather, he asserts that the language

used in paragraph four very clearly states that his mother intended his payment of $24,000 to fully satisfy the debt owed by appellant. Appellees agree that paragraph four is not ambiguous. Needless to say, they vigorously assert that paragraph four only refers to farm-related loans. We agree.

■ As noted by appellees, appellant limits his reading of paragraph four to a single sentence. However, a fair reading of paragraph four in its entirety supports appellees' position that the paragraph governs only farm-related loans. The paragraph begins with the sentence, "My late husband and I have made various loans to my sons, John W. Stogsdill and Jerry Lee Stogsdill, *in connection with their acquisition of certain farmland and their farming operations*." The next sentence reads as follows:

> I give, devise, and bequeath all of my right title and interest in the amounts receivable by me pursuant to *said loans* to [appellees], and direct that *said loans* be repaid as follows: . . . I direct that [appellant] shall pay the total sum of $24,000.00 to James E. Stogsdill, Jr., in full satisfaction of the indebtedness which he owes to me. Said amount shall likewise be paid in annual installments of $2,400.00 over a period of ten years.

(Emphasis added.) The language in paragraph four is not ambiguous. It leaves no doubt that appellant's mother intended to address farm-related loans in paragraph four.

■ Turning to the loans at issue, the chancellor specifically found that all of the checks included in Plaintiffs' Exhibit 7 were personal loans to appellant, as opposed to farm-related loans. Our *de novo* review of the record supports the chancellor's conclusion. These checks, which totaled (with interest) $26,844.52, were made payable to the order of appellant and included the word loan on the notation line. Two additional checks, in the amount of $14,052.19 and $15,052.19, were found by the chancellor to represent bankruptcy payments. Given his observation that the checks were written for payments under appellant's bankruptcy repayment plan, the chancellor correctly concluded that the checks were written to satisfy the personal obligation of appellant rather than for farm-related loans contemplated under paragraph four of the will. Next, the chancellor addressed checks included in Plaintiffs' Exhibit 9. Five of these checks, totaling $4,462.99, were drawn on Mrs. Stogsdill's account and made payable to persons other than appellant. These checks, which were related to appellant's car, were found to be personal in nature. Unlike the checks included in Plaintiffs'

Exhibits 7-9, the checks listed in Plaintiffs' Exhibit 13 included specific notations of loans for items such as tractor repair, soybeans, and diesel fuel. These checks were excluded by the chancellor. Although appellees presented checks totaling over $100,000.00, the trial judge entered a judgment for $71,151.07.

While appellant contends that his testimony at trial demonstrated that he used all of the money to farm, the chancellor had the opportunity to hear the testimony of the parties and to observe their demeanor in an attempt to resolve conflicting testimony. His decision to enter a judgment of $71,151.07 in appellees' favor indicates that he found appellees credible. Given the chancellor's careful consideration of the evidence presented, we cannot say that his ruling was clearly erroneous.

### Whether Future-Advances Clause Secured Post-Petition Debt

Lastly, appellant asserts that the future-advances clause included in the 1984 mortgage did not secure the post-petition loans because appellees failed to prove that a valid debt existed at the time of the loans. As a result, he asserts that the chancellor erred in failing to grant a directed verdict in his favor. Relevant case law and the evidence presented at trial suggest otherwise.

When considering whether a trial court properly denied a motion for directed verdict, we look at the evidence presented in the light most favorable to the nonmoving party. *See Columbia Mut. Cas. Ins. Co. v. Ingraham*, 47 Ark. App. 23, 883 S.W.2d 868 (1994). We give the evidence the highest probative value and consider all reasonable inferences derived from it. When we conclude that there is substantial evidence to support the factfinder's verdict, we will affirm the trial court. *See id.*

In *Kitchens v. Evans*, 45 Ark. App. 19, 870 S.W.2d 767 (1994), our supreme court held that before a debt falling outside the statute of limitations period may be revived, an express promise to pay or an unequivocal acknowledgment of the debt must be made to the creditor or with the intention that the acknowledgment be communicated to the creditor.

Throughout the trial proceedings, appellees contended that they were not suing appellant to recover the face amount of the promissory notes. Instead, appellees asserted that they brought suit

to collect the personal loans made by Mrs. Stogsdill to appellant after he filed his bankruptcy petition.

As previously mentioned, appellant's 1984 promissory note to his mother was secured with a mortgage issued on the same date. This mortgage, executed on real property situated in the Lake District of Craighead County, included a future-advances clause, which encompassed future personal loans. As part of his 1990 bankruptcy reorganization payment plan, appellant included the debt he owed his mother as well as the real property securing the debt. The plan expressly deferred payment to Mrs. Stogsdill until after appellant's discharge from bankruptcy, and the discharge order specifically excluded money owed to Mrs. Stogsdill. No evidence was presented that appellant extinguished the 1984 promissory note or that the 1984 mortgage was released. Therefore, appellant's 1990 acknowledgment of the debt and the fact that it was payable upon demand after discharge served to revive any cause of action brought by or on behalf of Mrs. Stogsdill as of December 1996. Pursuant to *Kitchens v. Evans, supra*, the 1984 mortgage and promissory note were valid at the time appellant received the loans from his mother. Accordingly, we affirm.

Affirmed.

BIRD and BAKER, JJ., agree.